UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :    **MEMORANDUM DECISION**
LINGMAIN YANG, *et al.*,                                          :    **AND ORDER**
                                                                  :
                              Plaintiffs,                         :    18-cv-729 (BMC)
                                                                  :
              - against -                                         :
                                                                  :
EVERYDAY BEAUTY AMORE INC., *et al.*,                             :
                                                                  :
                              Defendants.                         :
----------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs bring this action under the Fair Labor Standards Act and the New York Labor Law, seeking to represent both a collective and a class of similarly situated employees. Plaintiffs move for leave to amend their complaint to (1) add a named plaintiff, (2) add 19 corporate defendants, (3) plead additional facts to support their claim that the corporate defendants constitute a single enterprise, (4) remove their claim for spread-of-hours pay, and (5) disclaim named plaintiff Yang Lingmin's desire to act as a representative of other plaintiffs in the putative collective and class actions. Defendants oppose plaintiffs' motion to the extent it seeks to add the 19 proposed corporate defendants on the ground that plaintiffs lack Article III standing. For the reasons that follow, plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs are former in-store salespersons at defendants' cosmetic stores. Specifically, the named plaintiffs claim that they were employed at stores located at 6301 8th Avenue, store #21, in Brooklyn, New York (owned and operated by named defendant Everyday Beauty Aritaum Inc.); 6301 8th Avenue, store #12-13, in Brooklyn, New York (owned and operated by

named defendant Everyday Beauty Amore Inc.); 40-24 College Point Boulevard, Suite B211, in Flushing, New York (owned and operated by named defendant Everyday Beauty Amore LLC); and 136-20 Roosevelt Avenue, Unit 202-205 in Flushing, New York (owned and operated by named defendant Everyday Beauty Missha Corp.). Plaintiffs also name Xiu Qing Su and Xin Lin as individual defendants, alleging that they are the owners, officers, directors, and managing agents of the corporate defendants, and make all business decisions with respect to employees' salaries and the number of hours they work.

Plaintiffs' (currently operative) first amended complaint alleges that defendants are a single enterprise under the FLSA. However, at a premotion conference on August 15, 2018, the Court deferred ruling on plaintiff's motion to conditionally certify a collective action until plaintiff alleged additional, non-conclusory facts to support its theory of single enterprise liability in a proposed second amended complaint.

Defendants generally deny plaintiffs' claims and raise several counterclaims, including that plaintiffs fraudulently diverted customer reward points for their personal use and stole the company's confidential customer lists. Defendants also contest the fact that named plaintiff Yang Lingmin is an employee; rather, they contend that Lingmin is an employer under the FLSA, and thus cannot adequately represent a collective or class action of employees. Defendants also filed a third-party complaint against Mei Hui Jiang, alleging that Jiang was also liable to defendants for the alleged fraud and theft.

## DISCUSSION

### I. Article III Standing

Defendants argue that plaintiffs lack Article III standing to assert their claims against the 19 proposed corporate defendants because plaintiffs have not sufficiently pleaded an

employment relationship between them and the named plaintiffs.[1]  The 19 proposed corporate

defendants are:

- Everyday Beauty Shop, Inc. (163 Hester St., Store B, New York, NY);
- Everyday Group LLC (63 Flushing Ave., Unit 148, Brooklyn, NY);
- Everyday Beauty Aritaum Lab Inc. (2038 86th St., Brooklyn, NY);
- Everyday Beauty Corp. (63 Flushing Ave., Unit 148, Brooklyn, NY);
- Everyday Beauty LG Inc. (135-24 Roosevelt Ave., Flushing, NY);
- Everyday Beauty Nature Collection Corp. (136-20 Roosevelt Ave., Flushing, NY);
- Everyday Beauty Shiseido Corp. (63 Flushing Ave., Brooklyn, NY);
- Everyday Beauty Supply Inc. (6546 Cromwell Crescent, #148, Rego Park, NY);
- John Doe Corp. 1 (163 Hester St., Store B, New York, NY);
- John Doe Corp. 2 (135-24 Roosevelt Ave., Flushing, NY);
- John Doe Corp. 3 (136-85 Roosevelt Ave., Flushing, NY);
- John Doe Corp. 4 (136-20 Roosevelt Ave., Unit 213, Flushing, NY);
- John Doe Corp. 5 (136-20 Roosevelt Ave., Unit 129, Flushing, NY);
- John Doe Corp. 6 (7 Catherine St., Store 7, New York, NY);
- John Doe Corp. 7 (18 E. Broadway, New York, NY);
- John Doe Corp. 8 (136-95 Roosevelt Ave., Flushing, NY);
- John Doe Corp. 9 (135-28 Roosevelt Ave., Flushing, NY);
- John Doe Corp. 10 (115 Bowery, New York, NY); and
- John Doe Corp. 11 (136-79 Roosevelt Ave., Flushing, NY).

To establish Article III standing, a plaintiff must show three elements: (1) that the plaintiff suffered an injury in fact; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable decision.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

A plaintiff suffers an injury in fact through "an invasion of a legally protected interest which is . . . concrete and particularized . . . and actual or imminent, not conjectural or hypothetical."  Id. at 560.  A causal connection exists where the injury is fairly traceable "to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party before the court."  Id. (internal quotation marks and citation omitted).

---

[1] Defendants do not contest that the named plaintiffs have Article III standing to assert their claims against the defendants named in the first amended complaint.

3

Defendants argue that for plaintiffs to have standing to assert their claims against the 19 proposed corporate defendants there must be 19 corresponding named plaintiffs who were employed at each of those store locations. According to defendants, because the named plaintiffs cannot meet the Second Circuit's test for whether the 19 proposed corporate defendants constitute their "employer" for purposes of the FLSA, plaintiffs cannot establish standing to sue them. In support of their position, defendants cite to the Second Circuit's statement in Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007), that "[t]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." See also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 159 (2d Cir. 2012).

Separate from individual employer liability, however, the FLSA also covers an "enterprise engaged in commerce or in the production of goods for commerce." Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12 CV 4380, 2014 WL 3734489, at *4 (E.D.N.Y. July 28, 2014). Here, plaintiffs have alleged that the corporate defendants constitute a single enterprise engaged in commerce – including the four corporate defendants already named in the first amended complaint and the 19 proposed corporate defendants. As a result, plaintiffs contend that the named plaintiffs can assert their claims against the 19 proposed corporate defendants, because they are all a part of a single enterprise facing FLSA liability.

The FLSA defines an enterprise engaged in commerce as one that:

(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any

4

person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

"Courts use a three-part test to determine when an entity is an enterprise: '(1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose.'" Marte v. Westbury Mini Mart, Inc., No. CV 16-53, 2017 WL 9485667, at *5 (E.D.N.Y. Jan. 18, 2017), report and recommendation adopted, No. 16CV0053, 2017 WL 838194 (E.D.N.Y. Mar. 3, 2017) (citing Berezueta, 2014 WL 3734489, at *4; Bowrin v. Catholic Guardian Soc'y, 417 F. Supp. 2d 449, 465-66 (S.D.N.Y. 2006)).

First, "[a]ctivities of more than one entity are related where the entities provide mutually supportive services to the substantial advantage of each entity." Berezueta, 2014 WL 3734489, at *6. For example, activities are considered related "when they are the same or similar, such as those of the individual retail or service stores in a chain." Bowrin, 417 F. Supp. 2d at 458.

Second, "'[c]ommon control' exists 'where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.'" Berezueta, 2014 WL 3734489, at *6 (quoting 29 C.F.R. § 779.221). Although common control does not by itself create a single enterprise, "if it appears that there is a reasonable relationship of all the activities to a single business purpose a different conclusion might be warranted." Id.

Finally, a common business purpose can be found in "commercial activity in competition with other private entrepreneurs." Bowrin, 417 F. Supp. 2d at 459.

In their proposed second amended complaint, plaintiffs allege the following facts to support their theory of single enterprise liability: (1) defendants share a single business website (that lists store locations at 10 separate addresses, overlapping in part with addresses listed with

5

the New York Department of State); (2) the corporate defendants are controlled by a central headquarters located at 63 Flushing Ave., Unit 148, in Brooklyn, NY; (3) each week, an individual from headquarters takes each store location's cash on hand; (4) employees at each store location are subject to a standardized set of rules, including a 20% employee discount, a $1,000 cap on monthly employee purchases, a dress code, a wage schedule of $70 per day during training periods, a benefits schedule for managers and vice-managers, and resignation notice requirements that vary by position; and (5) the customer points rewards system is centrally controlled.

Plaintiffs further claim that defendants act in the interest of each other with respect to employees, pay employees by the same method, and share control over defendants; and further allege that each defendant possessed substantial control over plaintiffs' and other employees' working conditions as well as the employment and compensation policies and practices at issue in this lawsuit.[2]

Plaintiffs have sufficiently pleaded that the corporate defendants (including the 19 proposed entities) constitute a single enterprise under the FLSA. First, plaintiffs have included facts to support the point that the corporate defendants engage in the same or similar activities. Each store location sells beauty supplies using variations of the name "Everyday." See Bowrin, 417 F. Supp. 2d at 458. The store locations are listed (to an extent) on a shared business website and with the New York Department of State; and the employees at each store are subject to a standard dress code, discount, training wage schedule, and monthly purchase cap, among other

---

[2] Alternatively, plaintiffs allege that defendants constitute a single employer because the individual defendants operate the corporate defendants as alter egos of themselves. Essentially, plaintiffs claim that the individual defendants failed to adhere to corporate formalities and did not maintain the corporate defendants as separate and distinct legal entities. These allegations are also contained within the first amended complaint, and are not the subject of this Order.

similarities. This "provision of mutually supportive services" suggests that the corporate defendants are operationally interdependent for FLSA purposes. See Berrezueta, 2014 WL 3734489, at *6.

Second, plaintiffs have made a sufficient showing at this stage of common operation and control. Specifically, plaintiffs allege that a central headquarters controls the corporate defendants, and every week an individual from headquarters collects money from each corporate defendant.

Finally, plaintiffs have sufficiently alleged that the corporate defendants share a common business purpose – namely, to compete in commercial activity for the sale of beauty supplies. See Bowrin, 417 F. Supp. 2d at 459. This is supported by plaintiff's allegation that the customer rewards points system is centrally controlled; it suggests that defendants' share a single customer pool, for whose business they compete (and reward) together.

Therefore, the three prongs of the test for enterprise liability weigh in favor of finding that plaintiffs have alleged sufficient non-conclusory facts to maintain their action against the corporate defendants as a single enterprise under the FLSA. Thus, the named plaintiffs (who claim they were employed at four of the store locations in the "Everyday" enterprise) have established their standing to sue the 19 proposed corporate defendants as units of that enterprise. See Indergit v. Rite Aid Corp., No. 08 CIV. 9361, 2009 WL 1269250, at *3 (S.D.N.Y. May 4, 2009) (noting that once the lead plaintiff's individual standing is established, "Article III's requirements are met."). The fact that the named plaintiffs never worked at a majority of the store locations in the enterprise goes to their adequacy to represent the putative collective and class – it does not hinder their ability to bring this lawsuit in the first instance, in light of plaintiffs' new facts supporting enterprise liability.

## II. Leave to Amend

Although plaintiffs have established their standing to sue the 19 proposed corporate defendants, the Court must still grant plaintiffs leave to amend their complaint.

After a party amends its pleading once as a matter of course, the party may thereafter amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Generally, "[i]n the absence of any apparent or declared reason . . . such as undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . the leave sought should, as the rules require, be freely given." Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 109 (2d Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

However, when a scheduling order has already been entered in a case, Rule 15(a)(2)'s "lenient standard" to amend the pleadings "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." Grochowski v. Phoenix Const., 318 F.3d 80, 86 (2d Cir. 2003) (internal quotations omitted); see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Otherwise, Rule 16(b)(4)'s good cause requirement would be read out of the Federal Rules. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992)).

A finding of good cause "depends on the diligence of the moving party." Id. "By limiting the time for amendments, [Rule 16(b)] is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." Parker, 204 F.3d at 339-40 (internal quotations omitted).

One court has explained that:

> Good cause may be established if the moving party can demonstrate that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. It may also be established by demonstrating that reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with the deadlines in the [scheduling order]. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

LaFlamme v. Carpenters Local No. 370 Pension Plan, 220 F.R.D. 181, 186 (N.D.N.Y. 2003).

A scheduling order was entered in this case on April 19, 2018. Pursuant to that order, plaintiffs were directed to file their anticipated first amended complaint by April 23, 2018, and defendants were directed to file their counterclaims, third-party complaint, and answer by April 20, 2018. In addition, fact discovery would be completed by October 14, 2018. Therefore, the "good cause" standard of Rule 16(b) governs the analysis here.

Plaintiffs have good cause to amend the complaint in this instance. Their previous counsel withdrew on June 25, 2018 and their current counsel appeared on July 6, 2018. The new facts alleged in the proposed second amended complaint were obtained through a good faith investigation conducted by plaintiff's new counsel, and plaintiffs should be able to amend their complaint accordingly. Put simply, plaintiffs' delay was not due to their lack of diligence. Further, as the case is still in its infancy – indeed, the Court has not even conditionally certified a collective action – allowing this amendment will not severely prejudice defendants.

Therefore, because plaintiffs have good cause to amend and because plaintiffs have established their Article III standing through single enterprise liability, plaintiffs are granted leave to amend the complaint to add the 19 proposed corporate defendants and the additional facts supporting the existence of that enterprise.

Further, per the Court's instruction, plaintiffs seek to add Mei Hui Jiang (currently a third party) as a named plaintiff. This request is granted, because Jiang's alleged liability is identical to that alleged against the remainder of the named plaintiffs. Mei Hui Jiang will be dismissed as a third party.

Plaintiffs also seek to withdraw their spread-of-hours claims without prejudice. This request is granted. If plaintiffs uncover evidence during discovery that credibly suggests a spread-of-hours violation, plaintiffs may move to amend the complaint to reallege these claims.

Finally, plaintiffs wish to disclaim named plaintiff Yang Lingmin's desire to act as a representative of other plaintiffs in a putative collective or class action. Defendants continue to allege that this plaintiff is actually an employer, and thus could be liable to the putative collective or class along with the other defendants. Because this issue could result in plaintiff Lingmin's inadequacy to represent other employees, plaintiffs' request is granted.

## CONCLUSION

Plaintiffs' [43] motion to amend is GRANTED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       October 3, 2018