UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
LANQING LIN, *et al.*,                                      :
                                                            :
                                Plaintiffs,                 :    **MEMORANDUM DECISION**
                                                            :    **AND ORDER**
            - against -                                     :
                                                            :    18-cv-729 (BMC)
EVERYDAY BEAUTY AMORE INC., *et al.*,                       :
                                                            :
                                Defendants.                 :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), seeking to represent both a collective and a class of similarly situated employees. Plaintiffs have moved for conditional certification of a putative collective under § 216(b) of the FLSA. Defendants do not oppose plaintiffs' request to provide notice to the putative collective; defendants do, however, oppose the proposed scope of the collective and form of notice. For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are former retail sales employees at four of defendants' cosmetic stores.[1] They allege that defendants – the "Everyday Beauty" enterprise – willfully subjected their employees to a widespread common policy and practice of not paying proper minimum wage and overtime compensation, as required by the FLSA and the NYLL. Plaintiffs also allege that defendants did

---

[1] Plaintiff Yang Lingmin, who previously sought to represent the putative collective, is now proceeding only on behalf of herself.

not provide them with proper wage notice and statements or maintain adequate wage records as required by the NYLL.

Plaintiffs were employed by defendants at the following store locations: 6301 Eighth Avenue, store #21, Brooklyn, NY 11220; 6301 8th Avenue, store #12-13, Brooklyn, NY 11220; 40-24 College Point Blvd, Suite B211, Flushing, NY 11354; and 136-20 Roosevelt Ave, Unit 202-205 Flushing, NY 11354. Plaintiffs amended their complaint to add 19 additional store locations, all 23 of which plaintiffs allege make up a single enterprise under the FLSA.

From what the Court can glean from plaintiffs' disorganized and confusing affidavits,[2] it appears that plaintiffs have spoken with Everyday Beauty employees at the following additional store locations: 2038 86th St., Brooklyn, NY; 136-79 Roosevelt Ave., Flushing, NY; unidentified stores in Chinatown, New York, NY (which, based on the second amended complaint, could refer to three different locations); a store location referred to as "Everyday Beauty"; a store referred to as the "SK-II Shop" in Flushing, Queens, NY; an unidentified souvenir shop on 8th Avenue (that might actually refer to one of the other 8th Avenue locations); and another unidentified location. Being generous, this amounts to a total of 13 locations at which plaintiffs aver that employees were subject to defendants' common practice and policy of not paying proper minimum wage and overtime compensation. Plaintiffs argue that, from these

---

[2] Plaintiffs are cautioned that, in the future, they need to be clear and consistent with respect to how they refer to each store location and the individuals involved in this case. For example, simply referring to a store location as "Everyday Beauty" is not helpful here, where each individual store name includes some variation of that phrase. In addition, interchangeably referring to store locations by their addresses or short-hand phrases is very difficult to follow. And only using first names to describe the other employees with whom the named plaintiffs spoke is not helpful to determine the total universe of purported similarly-situated employees at this time. Moving forward, plaintiffs must either uniformly use unique store addresses to refer to store locations or otherwise provide the Court and defendants with an operative chart as to which 23 unique short-hand phrases will refer to which 23 store locations for the duration of this case. The Court leaves it to plaintiffs to decide how best to proceed, but further jumbled filings like the ones provided with this motion will be stricken.

averments, the Court can reasonably infer that employees who worked at the other 10 stores in the Everyday Beauty enterprise were also subject to this common practice and policy.

## DISCUSSION

Section 216(b) of the FLSA creates a private right of action for employees to recover unpaid minimum wage and overtime compensation on behalf of themselves and similarly situated employees. Similarly situated employees must opt into the collective action by filing their written consent with the Court before they may proceed as plaintiffs. See 29 U.S.C. § 216(b). Thus, district courts have discretion to facilitate a notice process by which potential plaintiffs are informed of the pendency of an FLSA action that they might joint to adjudicate their rights. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

Consistent with this discretion to facilitate notice, courts in the Second Circuit conduct a two-step process to determine whether to certify a collective action under the FLSA. See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. (internal quotation marks and citations omitted). This step requires plaintiffs to "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (internal quotation marks and citations omitted). "[T]he focus of the inquiry is not on whether there has been an actual violation of law but whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (internal quotations marks and citations omitted).

"At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Myers, 624 F.3d at 555 (internal quotation marks and citations omitted). "The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. (internal quotation marks and citations omitted).

Plaintiffs' motion concerns only the first step of this process. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).

As noted above, defendants do not oppose plaintiffs' request to send notice to the putative collective. Indeed, it appears that defendants sought to negotiate in good faith and stipulate to the form of notice, consistent with the Court's order.[3] Defendants do oppose, however, the scope of the putative collective as well as certain aspects of plaintiffs' proposed notice. Each point of objection is addressed below, in turn.

**I.     Scope of the Putative Collective**

   *A.     Employees at Stores Not Included in Plaintiffs' Affidavits*

Defendants argue that because plaintiffs have not spoken to employees who worked at each of defendants' stores, the putative collective cannot include employees from all 23 locations.

---

[3] It appears from defendants' filings that plaintiffs might not have been reasonable or professional in their negotiations with defendants with respect to the form and scope of notice. The Court will consider this conduct in any fee application that plaintiffs might file in this case.

Plaintiffs aver that employees at up to 13 of defendants' stores were subject to the alleged common plan or policy of underpayment. Although there is caselaw to suggest that when plaintiffs do not state any facts as to the existence of a common policy or practice of underpayment at other store locations a collective action should not include those stores, those cases involved situations where store locations existed nationwide, see, e.g., Ahmed v. T.J. Maxx Corp., No. 10-CV-3609, 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013), or where plaintiffs included facts as to only one or two of many purported locations, see, e.g., Anjum v. J.C. Penney Co., No. 13 CV 460, 2015 WL 3603973, at *9 (E.D.N.Y. June 5, 2015). Conditional collective certification is often granted, however, where, as here, there is a "much narrower class of putative plaintiffs, a wider sample of evidentiary support, or both." Id.

Plaintiffs "have provided [enough] evidence of commonality between the locations." See Marin v. Apple-Metro, Inc., No. 12 CV 5274, 2014 WL 11035376, at *6 (E.D.N.Y. July 29, 2014). Although modest, plaintiffs have averred that employees were subject to this scheme at more than half of defendants' store locations. Because the remainder of the stores are all in New York City, the Court can reasonably infer that the common scheme existed at all of them.

Plaintiffs' motion is granted with respect to including employees from all 23 store locations named in the second amended complaint.

### B. *Employees Other Than Retail Sales Employees*

As noted above, each named plaintiff is a former retail sales employee at one or more of defendants' store locations. They seek to include other retail sales employees, all other nonmanagerial employees, and exempt managers in the putative collective.

Plaintiffs have not provided one iota of fact to suggest that nonmanagerial employees other than retail sales employees were subject to the common practice or policy of underpayment

5

that is alleged here.  In fact, plaintiffs do not even suggest what other types of employees exist at defendants' stores.

Any argument to the contrary is conclusory at best.  Plaintiffs' affidavits do not include *any* factual showing – let alone a modest one – to support these claims:  they do not include any facts as to the hours worked by or amounts paid to any nonmanagerial positions other than retail sales employees.  As a result, the scope of the putative collective cannot cover any nonmanagerial employees other than retail sales employees.  See She Jian Guo v. Tommy's Sushi Inc., No. 14 CIV. 3946, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014).

As to the exempt managers, plaintiffs aver that they spoke with individuals who were or are managers at defendants' store locations and include some facts as to what those individuals are paid and of what their duties consist.  Normally, managers are not included in collective actions because under the FLSA employers need not pay overtime to individuals who are "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  Despite that, plaintiffs can establish that exempt managers are similarly situated to them "by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme."  Myers, 624 F.3d at 555 (internal quotation marks, citations, and alterations omitted).

Plaintiffs' affidavits state that managers are paid one dollar more per hour than retail sales employees, and further, that some managers received this increased rate, others received fifty cents more per hour, and still others did not receive any increased rate of payment at all.  The affidavits also explain that the only difference in job duties between the so-called managers and the retail sales employees was that managers also had to order products.

6

This is a sufficient showing under the first step of the collective certification process. Plaintiffs have included enough facts to suggest that individuals who were employed at defendants' store locations as managers might not actually be exempt from the FLSA overtime requirements. Indeed, plaintiffs' affidavits even suggest that these "managers" were paid at an hourly rate, rather than by salary. In any event, because the executive exemption is necessarily a fact-intensive inquiry, it is more appropriately handled at the second step. On a fuller record, defendants may move to dissolve the collective as to these "managers" if discovery supports defendants' contention that they are, in fact, exempt (and, therefore, are not similarly situated to the named plaintiffs or other retail sales employees).

Defendants argue that because plaintiffs' complaint states that they bring this action on behalf of current and former non-exempt employees, their request to proceed on behalf of the "exempt" managers should be denied. The Court is not persuaded by this, because, in effect, the facts in plaintiffs' affidavits suggest that these individuals function as non-exempt retail sales employees – which is consistent with the scope of plaintiffs' complaint.

### C. *Employees with Arbitration Agreements*

After October 31, 2017, all Everyday Beauty retail sales employees signed an arbitration agreement as a condition of either their new or continued employment, which contains a waiver of participation in any FLSA collective actions. Specifically, the provision states:

> I also agree to waive my right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company, and its heirs, executors, administrators, successors, assigns, shareholder, partners, members, directors, officers, employees, and agents are a party.

Defendants argue that any employee who has signed this arbitration agreement and FLSA collective action waiver is not similarly situated to the named plaintiffs and notice of this action

7

should not be provided to them. Because defendants aver that this agreement was a condition of both new and continued employment, this would affect any employee who began or remained working at any of defendants' store locations after October 31, 2017 – a significant portion of what would otherwise be the putative collective.

Plaintiffs contend that employees cannot waive their FLSA rights by contract. This argument is foreclosed by <u>Sutherland v. Ernst & Young LLP</u>, 726 F.3d 290 (2d Cir. 2013), in which the Second Circuit held that the FLSA does not prohibit class or collective action waiver provisions in arbitration agreements. Thus, these agreements are enforceable by their terms.

Plaintiffs also argue that the question of whether these arbitration agreements prohibit employees from proceeding in a collective action should be probed on the merits during the second step. Although plaintiffs are technically correct that the first step considers only whether other employees are similarly situated as to the existence and application of a common practice or policy – as compared to their ability to recover on the merits or their means to do so – this nuance cannot save them here. Indeed, every case plaintiffs cite in support of this position predates the Second Circuit's decision in <u>Sutherland</u>, which eliminates any persuasive effect they may have otherwise had.

It would waste everyone's time and resources to conditionally certify a group of individuals that the Court is virtually certain to decertify at step two. This is not to mention the risk of confusion to and subsequent disappointment of the employees who have signed the arbitration agreement. Moreover, if the Court granted plaintiffs' request, it would likely precipitate an immediate motion by defendants to compel arbitration of these employees' claims on an individual basis. This motion practice would forestall the collective action process and

likely eliminate these plaintiffs from the collective anyway – all before we had proceeded to the second step.

The relevant record as to these employees is the arbitration agreement. That record is before the Court now and there is no benefit obtained by waiting until step two to decide this issue. Based on the terms of the agreement, and defendants' attestation that every retail sales employee has signed this provision as a condition of new or continued employment, these FLSA waivers are enforceable against any employee who began working or continued working at an Everyday Beauty store after October 31, 2017.

Those employees are not similarly situated to the named plaintiffs. Rather, their FLSA and NYLL claims must be arbitrated on an individual basis, and they cannot join this action. See id. at 292 n.1 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 351-52 (2011)). Providing notice to them, therefore, would be futile.

Plaintiffs' motion is denied with respect to including employees who signed arbitration agreements. In other words, the putative collective will not include any employees who began to work or continued working at defendants' stores after October 31, 2017.

**II.     Form of Notice**

   *A.     Translation*

Plaintiffs request that notice be provided to the putative collective in both English and Chinese. Because most of the potential plaintiffs' native language is Chinese, this request is granted.

Defendants ask that plaintiffs provide them with a copy of the Chinese translation in advance of issuing notice, with enough time for defendants to file any objections. Defendants' request is reasonable, and plaintiffs did not object to it. At the same time plaintiffs file their

revised notice, they must also file the Chinese translation of that notice for defendants and the Court to review.

### B. *Defense Counsel's Contact Information*

Defendants request that the notice include defense counsel's contact information in addition to plaintiffs' counsel's contact information. "Inclusion of such information is routine." She Jian Guo, 2014 WL 5314822, at *4 (collecting cases); see also Anjum, 2015 WL 3603973, at *14; Velasquez, 2014 WL 2048425, at *13.

Plaintiff did not oppose this request, so it is granted. Plaintiffs' revised notice must include defense counsel's name and contact information.

### C. *Reference to NYLL Claims*

Defendants object to the inclusion on the form of notice of any reference to plaintiffs' NYLL claims. Plaintiffs argue in response that because the NYLL claims are a part of this litigation and because the Court has jurisdiction over those claims, they "see no reason that part of the claims of the litigation should not be posted on the notice." Plaintiffs obviously misconstrue their role as advocates here: they must argue to the Court why it should see a legally-sound reason to grant their request.

Some courts in this district have permitted the collective action notice to refer to NYLL claims as well as FLSA claims when the notice period is six years – which is consistent with the statute of limitations for NYLL claims, see, e.g., Garriga v. Blonder Builders Inc., No. CV17497, 2018 WL 4861394, at *9 (E.D.N.Y. Sept. 28, 2018), or when unique unsettled issues of fact and law regarding the validity of the potential NYLL claims are presented, see, e.g., Miranda v. Gen. Auto Body Works, Inc., No. 17CV04116, 2017 WL 4712218, at *3 (E.D.N.Y. Oct. 18, 2017). But other courts have disagreed, finding reference to NYLL claims misleading about the nature

of the FLSA collective action.  See, e.g., Keawsri v. Ramen-Ya Inc., No. 17-CV-2406, 2018 WL 279756, at *7 (S.D.N.Y. Jan. 2, 2018).

The point of the notice process is to alert potential opt-in plaintiffs to the fact that this action is pending, and more importantly, to inform them that they must affirmatively consent to join it to adjudicate their FLSA claims.  The notice period here is three years, not six; and the scope of the putative collective is smaller than it would otherwise be, because employees with claims older than three years cannot join it.

It is more appropriate to focus the notice on the discrete FLSA portion of this litigation.  Plaintiffs later intend to seek to certify a class with respect to the pending NYLL claims, which will not require any affirmative action by class members and will also involve a significantly greater number of people than the putative collective because of the longer statute of limitations for those claims.

Plaintiffs' revised notice must strike any reference to the NYLL claims.

### D.     *Opt-In Period*

Plaintiffs request a 90-day opt-in period, arguing that courts within the Second Circuit have found this time frame reasonable.  Defendants are correct that a 60-day period is much more consistent with decisions in the Second Circuit.  See Velasquez v. Digital Page, Inc., No. CV 11-3892, 2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014).

Plaintiffs "insist" that a 90-day period will give potential opt-in plaintiffs "enough time to think about the case and make a sound decision."  But they do not explain why, or point to any extenuating circumstances suggesting that, a potential plaintiff in this case could not do the same thing in 60 days.

Plaintiffs' revised notice must restrict the opt-in period to 60 days.

11

### E. Equitable Tolling

The parties seem to agree that the statute of limitations for potential plaintiffs' FLSA claims in this case is three years. See 29 U.S.C. § 255(a). Plaintiffs have moved the Court to equitably toll the statute of limitations until the expiration of the opt-in period (as requested, for 90 days, but as modified, for 60 days).

"In a FLSA collective action, the statute of limitations runs for each plaintiff until he files written consent with the court to join the lawsuit." Yahraes v. Rest. Assocs. Events Corp., No. 10-CV-935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). The statute of limitations is not tolled upon the filing of the complaint, as it is in a class action, and opt-in plaintiffs' consent forms do not relate back to the filing of the complaint. As a result, "[i]f the limitations period is not [] tolled, opt-in plaintiffs would not be able to make claims for any period prior to three years from the date they actually file a consent to join the action." Contrera v. Langer, 278 F. Supp. 3d 702, 722-23 (S.D.N.Y. 2017) (citing 29 U.S.C. § 256(b); Yahraes, 2011 WL 844963, at *1.

However, "[f]ederal courts should grant equitable tolling sparingly, and only in rare and exceptional circumstances." Yahares, 2011 WL 844963, at *1 (internal quotation marks, alterations, and citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (citing Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

Plaintiffs advance two arguments in support of equitable tolling: first, they argue that FLSA actions present unnecessary delay, so the statute of limitations should be tolled to provide sufficient notice to potential plaintiffs and allow them time to file their consent forms; and

12

second, plaintiffs claim that equitable tolling is warranted because members of the collective are unaware of their rights. Plaintiffs do not, however, explain why their case is different in these respects from any other FLSA action.

Other courts in this Circuit have denied requests for equitable tolling where plaintiffs rely only on defendants' failure to notify plaintiffs of their rights, "as it would provide for equitable tolling whenever a defendant violated FLSA and NYLL by failing to post notices or provide statements of hours and wages." Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 279 (E.D.N.Y. 2015); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008) (quoting Patraker v. Council on the Env't of New York City, No. 02 Civ. 7282(LAK), 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003)) ("To hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime."). But other courts have found that the fact that "equitable tolling issues often arise in other FLSA actions is sufficient to send notice to the larger group." Knox v. John Varvatos Enterprises Inc., 282 F. Supp. 3d 644, 661 (S.D.N.Y. 2017) (internal quotation marks omitted) (collecting cases).

As did the court in Knox, this Court disagrees with those decisions that effectively eliminate the requirement of extraordinary or unique circumstances giving rise to potential for equitable tolling in FLSA cases. The Second Circuit has made clear that equitable tolling is reserved for "rare" circumstances, and to disregard that instruction here would create "a rule that simply assumes that equitable tolling will be routinely available in all FLSA cases." Id.

Plaintiffs do not even argue that they have pursued their claims diligently, let alone that theirs is an exceptional case. Although articulated in an entirely different legal context, the

Supreme Court has instructed that equitable tolling is not a "cure-all for an entirely common state of affairs."  Wallace v. Kato, 549 U.S. 384, 396 (2007).  If Congress wanted to toll the statute of limitations for opt-in plaintiffs under the FLSA as a means of avoiding the very scenario that plaintiffs argue warrants equitable tolling here, Congress would have included such a provision in the statute.  It did not, and plaintiffs have not shown why their case is any different from a regular, run-of-the-mill FLSA collective action.

Plaintiffs' motion for equitable tolling of the statute of limitations is denied.

### F. *Method of Notice*

Plaintiffs seek to provide notice to potential members of the putative collective by first class mail, email, telephone, and by posting the notice in conspicuous locations in defendants' stores.  Defendants contend that plaintiffs have not demonstrated that notice by first class mail is insufficient, so they should not be entitled to provide notice by any other means.

Normally, posting the notice in conspicuous locations at subject stores would be the method most likely to ensure that potential plaintiffs actually receive notice of the collective FLSA action.  But here, because defendants attest that signing that agreement was a condition of both new and continued employment at their stores, any employee who is currently working at any of defendants' store locations will have signed an arbitration agreement and FLSA collective action waiver.  Those individuals are not members of the putative collective.  Thus, there is no reason to post any notice of this action in defendants' stores.

Because notice will not be posted in defendants' store locations, however, it is appropriate for notice to be provided both by first class mail and email to ensure that potential plaintiffs receive notice of this action.  Plaintiffs have not shown why providing additional notice by direct telephone solicitation is necessary, and the Court does not see why it is.  Indeed, if potential plaintiffs do not respond to multiple forms of written notice, then it is safe to assume

they do not want to be a member of the collective, and it is further safe to assume that they do not want anyone contacting them by phone to discuss it.

Plaintiffs' proposed order granting their motion also states that notice "shall be published in an English, and Chinese languages newspaper at Defendants' expense for Defendants' failure to furnish accurate addresses." This presents two issues. First, and most peculiarly, plaintiffs have included in their proposed order a means of relief that they do not even mention (let alone argue in support of) in their motion. Second, the proposed order preemptively suggests that defendants have engaged in inappropriate conduct by withholding information from plaintiffs, and purports to charge them for it.

Because plaintiffs have provided no reason why publication in newspapers is necessary; because notice by first class mail and email is sufficient; and because defendants have not been proven to have done anything wrong, this request is denied.

### G.     *Third-Party Administrator*

Defendants request that a third-party administrator issue notice to potential members of the putative collective. They also offer to bear the costs of this administrator.

Plaintiffs are correct that these types of requests are often denied. Having a third party administer notice is not a requirement mandated by most courts in the Second Circuit. Here, however, defendants make a reasonable request and – importantly – they offer to pay for it. Because in any fee-shifting application filed by plaintiffs in this action defendants would have to pay for the cost of plaintiffs' counsel to issue notice; because plaintiffs do not explain the basis for their objection to this request other than citing to a general lack of requirement; and because courts in this district prefer to encourage individual plaintiffs to retain their own counsel, see infra, the Court sees no reason not to grant this request.

Within seven days of this order, defendants are directed to retain a mutually agreeable third-party administrator for the purpose of issuing notice to members of the putative collective. Plaintiffs are not to unreasonably withhold consent to defendants' proposed administrator.

### H. *Returning Consents*

Plaintiffs request that collective members return their consent forms to plaintiffs' counsel; defendants request that they be returned to the Clerk of Court instead. Plaintiffs argue that "[t]he majority of courts in this district have held that opt-in plaintiffs should mail the consent to join forms to plaintiffs' counsel." Plaintiffs cite to She Jian Guo, 2014 WL 5314822, at *5, in support of this proposition. But She Jian Guo is Southern District of New York case, not an Eastern District of New York case: plaintiffs' mis-citation mischaracterizes the state of the law in this district.

Instead, "[t]he common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel." Velasquez, 2014 WL 2048425, at *14 (collecting cases); see also Perez v. La Abundancia Bakery & Rest. Inc., No. 17-CV-0656, 2017 WL 3382068, at *9 (E.D.N.Y. Aug. 4, 2017) (same). This practice is favored here because returning consent forms to the named plaintiffs' counsel implicitly discourages opt-in plaintiffs from retaining their own counsel, and instead, encourages them to have plaintiffs' counsel to represent them too. See Perez, 2017 WL 3382068, at *9.

Although some courts in this district have allowed consent forms to be returned to plaintiffs' counsel, the notice in those cases instructed that opt-in plaintiffs may select their own counsel, which those courts found reduced the risk that opt-in plaintiffs would be implicitly discouraged against it. See, e.g., Mata-Primitivo v. May Tong Trading Inc., No. CV 2013-2839, 2014 WL 2002884, at *6 (E.D.N.Y. May 15, 2014). Plaintiffs' proposed notice does state that opt-in plaintiffs "have a right to hire an attorney of [their] choice." But it also instructs that they

16

"do not need to hire [their] own lawyer because the named plaintiffs' counsel will be working on [their] behalf" and states that "[i]f [they] choose to join this lawsuit, [they] will be represented by Plaintiffs' Counsel: Troy Law, PLLC, 41-25 Kissena Boulevard, Suite 119, Flushing, New York 11355, (718) 762-1324." This is somewhat misleading, so sending consent forms to the Clerk of Court will help mitigate against any implicit encouragement to retain plaintiffs' counsel.

Further, because a third-party administrator will issue notice, it would be confusing for the opt-in plaintiffs to return their consent forms to plaintiffs' counsel. There is no need for this extra step. Plaintiffs' revised notice should direct any collective members to return their consent forms directly to the Clerk of Court.

### I. *Production of Contact Information*

Plaintiffs seek expedited disclosure of contact information for members of the putative collective, although they do not explain what they mean by "expedited." Specifically, plaintiffs request an Excel spreadsheet containing the names, last known addresses, telephone numbers, email addresses, and dates of employment for all employees employed by defendants from February 1, 2015 through the present.

Plaintiffs' proposed order – but, again, nothing in their memorandum in support of their motion – also requests the "WeChat ID and/or Facebook usernames" of each current and former employee. Because plaintiffs did not request or brief providing notice by these means, and because the Court sees no reason why notice should be provided in this manner, this specific request is denied. Rather, plaintiffs' motion is granted to the extent necessary to facilitate providing notice by first class mail and email to viable members of the putative collective.

Within 14 days of the date of this order, defendants must produce to their retained third-party administrator the names, last known addresses, email addresses, and dates of employment for all retail sales employees and managers employed by defendants from three years prior to the

date of this order until October 31, 2017.  See <u>Lopes v. Heso, Inc.</u>, No. 16CV6796, 2017 WL 4863084, at *6 (E.D.N.Y. Oct. 27, 2017) ("The look-back period is usually determined from the date on which the notice is issued.").

## CONCLUSION

Plaintiffs' [69] motion for conditional certification is granted in part and denied in part.  For clarification, the collective action is conditionally certified to include former retail sales employees and managers who were employed at an "Everyday Beauty" store location before October 31, 2017.

Plaintiffs' revised notice is due within seven days of the date of this order.  If plaintiffs would like to expedite the notice process by eliminating an objection period for defendants, they are encouraged to work with defendants and stipulate to the revised English and Chinese notice, consistent with the terms of this order.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 9, 2018