UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
LANQING LIN, *et al.*,                                     :
                                                           :
                              Plaintiffs,                  :  **MEMORANDUM DECISION**
                                                           :  **AND ORDER**
              - against -                                  :
                                                           :  18-cv-729 (BMC)
EVERYDAY BEAUTY AMORE INC., *et al.*,                      :
                                                           :
                              Defendants.                  :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs are former retail sales employees of beauty supply stores in the "Everyday Beauty" chain. Plaintiffs are proceeding in a collective action on their Fair Labor Standards Act claims. Plaintiffs have now moved to certify a class under Federal Rule of Civil Procedure 23 for their claims under the New York Labor Law ("NYLL"). Plaintiffs' proposed class is as follows:

> All individuals who were employed by Defendants as sales representatives or store managers during the six years immediately preceding the initiation of this action up to September 18, 2016.

Plaintiffs state that this proposed class essentially consists of all of defendants' employees during the relevant six-year period. They estimate that this will include approximately 350 individuals.[1]

To be eligible for class certification, plaintiffs must demonstrate that the four requirements of Rule 23(a) are met. Those requirements are: (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are

---

[1] Plaintiffs originally sought to certify a different class definition but then asked in their reply to change the definition to this one. Despite that change, both definitions result in the same class size estimate, which suggests that there is no meaningful difference between them.

typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a) (1)-(4).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). Rather, plaintiffs "must affirmatively demonstrate [their] compliance with the Rule – that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis in original). "[A] plaintiff must provide 'significant' and 'convincing' evidence that satisfies the Rule 23 requirements." Ackerman v. Coca-Cola Co., No. 09 CV 395, 2013 WL 7044866, at *6 (E.D.N.Y. July 18, 2013) (citing Wal-Mart, 564 U.S. at 353-54, 359).

With respect to numerosity, as noted above, plaintiffs claim that there are approximately 350 members in the proposed class, "based on reasonable inferences from available facts." In the Second Circuit, "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg On Class Actions 2d, (1985 Ed.) § 3.05)).

Plaintiffs have seemingly arrived at this 350 number for the six-year class period by roughly doubling the number of employees that defendants identified as having worked at their stores during the approximately three-year collective period. That, of course, simply assumes the truth of plaintiffs' theory of the case, that every single Everyday Beauty employee is subject to the NYLL and was not treated in compliance its strictures during their employment. Moreover, plaintiffs' leap from the identified 166 employees to the approximated 350 employees is based

2

on pure speculation. But, if their theory of the case is correct, then plaintiffs have established numerosity at either amount (because 166 employees certainly satisfies the numerosity prong).

That begs the question, however, of whether plaintiffs have established that their class action theory is viable. It is their burden at class certification to advance enough facts to support the existence of the purported class. They must come forward with evidence to show that the inference they seek to draw – that 350 employees experienced similar violations of the NYLL during their employment at Everyday Beauty – is correct. In other words, plaintiffs must show typicality and commonality: that what happened to them also happened to others. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").[2]

Plaintiffs have submitted five affidavits in support of their Rule 23 motion that convey the allegations of the potential class. The relevant allegations from those affidavits are as follows:

| AFFIANT | ALLEGATIONS ABOUT OTHER EMPLOYEES |
|---|---|
| **Lanqing Lin**<br>• No overtime<br>• Worked during lunch break | • "I know Feifei was paid at the same rate as me because I saw her get her paychecks two or three times in early months of 2017 around January or |

---

[2] "To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). "Commonality 'does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment.'" Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (alterations in original) (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 153 (S.D.N.Y. 2002)).

| AFFIANT | ALLEGATIONS ABOUT OTHER EMPLOYEES |
|---|---|
| <ul><li>Automatic deductions</li><li>Not paid for all hours worked</li><li>No wage statements in Chinese</li><li>No hiring notice</li></ul> | February. She told me she gets as much as I do, and we thought all the sales representatives were paid the same."<br><br>• "I remember Little Tina telling me that Lisa deducted more than one thousand dollars from her commission. The commission was paid in cash based on the sales and working hours of each staffer."<br><br>• "I know Amy was paid at ten dollars ($10) per hour because in November of 2016, I heard Amy and Little Tina talking about their pay. One said she was paid $10 per hour, the other said she was paid the same."<br><br>• "I know Tina was paid by rate of eleven dollars ($11) per hour. I know this because she told me a couple of times in the end of December 2016 when the stores adjusted the basic salaries of the next year." |
| **En Lin Xiao**<ul><li>No overtime</li><li>Worked during lunch break</li><li>Automatic deductions</li><li>No wage statements in Chinese</li><li>No hiring notice</li></ul> | • "I know that it is defendants' policy to not pay any employee at time, and a half rate for all of their overtime hours. I know this because I have talked with other employees, who had the same or similar working schedule as me, and was told that they were also not paid for the total amount of time they have worked, nor compensated for all of their overtime hours worked." |
| **Huanhuan Ke**<ul><li>No overtime</li><li>No "adequate" wage statement before a certain time</li><li>No wage statements in Chinese</li><li>No hiring notice</li></ul> | • "I know all my co-workers I worked with were subjected to the same violations I experienced, prior to September 18, 2016, no one was paid at overtime rate for hours worked in excess of 40 in a week."<br><br>• "I know all my co-workers I worked with did not receive adequate wage statement as required by the New York Labor Law prior to September 18, 2016. I know all my co-workers I worked with did not receive wage statement in their native language, which is Chinese."<br><br>• "I remember a person named Summer . . . . I also remember Xiaoling Wang a/k/a Sandy, who is also an opt-in Plaintiff in this action. . . . There was Ella . . . . There was Fenny . . . . I also remember Pelly. . . . I know they were all paid at the same rates as I was because every payday, the boss, Xiuqing Su a/k/a Lisa, would bring the checks and purported 'wage statement' to the store. Everyone can see each other's rate."<br><br>• "I have also befriended with Everyday Beauty employees who worked at other locations . . . . I remember there was a girl named Sabrina . . . . There was 'Little C' . . . . There was Jenny . . . . There |

4

| AFFIANT | ALLEGATIONS ABOUT OTHER EMPLOYEES |
|---|---|
| | was Xiu Xiu . . . . There was Ruoying . . . . Finally, I remember a girl named Ting Yang . . . . Although I do not know their actual pay rates, I believe we were all paid the same way and at the same rate, because the stores were all managed by Lisa, and we had the same job duties, and similar schedules." |
| **Lixian Qian**<br>• No overtime<br>• Worked during lunch break<br>• No wage statements in Chinese<br>• No hiring notice | • "I know that it is Defendants' policy to not pay any employee at time and a half rate for all of their overtime hours. I know this because I have talked with other employees, who has the same or similar working schedule as me, and was told that they were also not paid for the total amount of time they have worked, nor compensated for all of their overtime hours worked."<br>• "All Everyday Beauty employee knows that every employee was paid $9 an hour since January 1, 2015, because it was Defendants' policy that sales representatives are paid the minimum wage except the managers get paid a little bit more per hour, and there is no overtime rate."<br>• "I know a 'store manager' named Tina. . . . She talked about per hourly rate around April2015. She told me that managers are paid one dollar more than other sales representatives. She was one of the managers, but she was still paid $9 per hour, at the same rate as me."<br>• "I also know a sales representative named Amy. I know her hourly rate was also $9 per hour because we were in the same position, had same job duties, and had similar working schedules. All the other employees at other Everyday Beau1y sores were all paid $9 per hour, there is no reason for her to receive any amount more or less."<br>• "I made friends with a person named Fiona. She was the 'store manager' . . . . Fiona was paid 10 an hour. It was common knowledge that 'manager' would get one or two dollars more an hour than sales representatives. However, it is not fair to call her 'manager', because manager was just a title, and the only difference between her job duty and mine was that she had to order products."<br>• "I also know a sales representative named Rena. I concluded that we got the same rate because there was no reason she got more or less than I did; both of us had same position and same working hours, and were both sales representatives." |
| **Yong Shan Su**<br>• No overtime<br>• Worked during lunch break<br>• Automatic deductions | • "I know everyone who worked in my store was paid the same as I did, except for Lingmin Yang, because I personally I asw other employees' paychecks."<br>• "From on or about August 2016 to October 2016, I had the opportunity to see the paychecks of Lingmin Yang, Lanqing Lin, and Enlin Xiao. Everyone was paid the same rate, and the same way, except for Lingmin |

| AFFIANT | ALLEGATIONS ABOUT OTHER EMPLOYEES |
|---|---|
| <ul><li>No "adequate" wage statements before a certain time</li><li>No hiring notice</li></ul> | Yang. Lingmin Yang was paid $2 dollars more per hour than the rest of us because she had the title of 'store manager.' Lingmin Yang's pay structure was also same as the rest of the sales representatives."<br><br>• "In late 2016, after a former employee sued Xiu Qing Su a/k/a Lisa, Lisa installed a machine to record employees' working hours. Lisa asked us to insert a one-hour break in the machine, but in reality, we did not take that one-hour break, and we were not compensated for that one hour of work."<br><br>• "I know a person named Emily. . . . In June or July 2016, I had a chat with Emily while we were in the shop, she told me that she was receiving the same compensation as the other employees."<br><br>• "I know another person named Feifei. . . . In August 2016, we had a chat while we were working together. During our discussion, she told me that she was getting the same pay as I did, regardless which store she worked."<br><br>• "I know another person named Ya Ya Xio. . . . I recall that Feifei and I once chatted about Ya Ya's payment. Ya Ya told Feifei that she thought that her payment was low."<br><br>• "I know a person named Janice. In September 2016, while we were working together, Janice and I chatted about Everyday Beauty's pay structure, and that is when I learned that both stores she worked for had the same pay structures, and policies."<br><br>• "I know another employee named Ting, also known as Ting. . . . We had a chat and she told me that her tax deduction was too high. . . . In June or July 2017, while Ting was working with Amy, they accepted a fake credit card and the shop incurred a loss of approximately $3,000 to $5,000. Amy paid half of that amount. Ting refused to pay her share and quit."<br><br>• "I know another person named Amy. . . . Around August 2017, Amy came to the store and told me about the fake credit card incident. She told me that Lisa had taken half of the incident amount out of her pay."<br><br>• "I know another person named Tina. . . . Tina was also paid the same way as all other Everyday Beauty Employees. [] I know this because in the fall of 2016, I chatted with Lingmin Yang, who told me that every once in a while, Lisa would call all the 'store managers' for a meeting to set the sales target at each store. Lingmin Yang also told me about Tina's hourly rate."<br><br>• "I know a person named Jessica. I believe her last name is Xia and her initials are L.X.H. . . . In September 2016, when the new store on 86th |

6

| AFFIANT | ALLEGATIONS ABOUT OTHER EMPLOYEES |
|---|---|
| | street opened, Jessica became the 'store manager' of that shop. Jessica's hourly rate is $0.5 higher than other employees' at that shop. I am aware of this because Lingmin Yang told me this when we were chatting in the fall of 2016."<br>• "I also know a person named Die Mei . . . . Die Mei worked as a sales representative at my store. After a month, Lisa asked her to work in another store location in Flushing. On her very first day at that shop, Rachel, the manager, fired her." |

The allegations speak for themselves. Besides the five affiants' statements about their own personal employment experiences, the allegations about other employees' experiences are pure hearsay.

The Supreme Court has explained that a plaintiff seeking class certification must "satisfy through evidentiary proof" that the provisions of Rule 23 have been met. Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). It reserved decision, however, on the question of whether that evidence must also be admissible. The Second Circuit has not addressed this issue either. This has led to a split amongst district courts in the Circuit as to whether evidence must be admissible to be considered on a Rule 23 motion. See, e.g., Harte v. Ocwen Fin. Corp., No. 13-CV-5410, 2018 WL 1830811, at *17 (E.D.N.Y. Feb. 8, 2018), report and recommendation adopted, No. 13CV5410, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018) (collecting cases).

In a thorough and well-reasoned opinion, Magistrate Judge Mann held in Lujan v. Cabana Mgmt., Inc., 284 F.R.D. 50, 64-65 (E.D.N.Y. 2012), that the Second Circuit would require evidence to be admissible in support of a Rule 23 motion and struck the plaintiffs' affidavits to the extent they contained inadmissible hearsay. Judge Mann's conclusion was based in part on the Second Circuit's observation in In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006), that "[a] district judge is to assess all of the relevant evidence admitted at

the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." Because a district court cannot rely on inadmissible hearsay to determine threshold issues such as jurisdiction, Judge Mann found that the same was true at class certification. See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986) (finding that Rule 56 is relevant to a jurisdictional challenge under Rule 12(b)(1), so affidavits filed in support of the latter must also be based upon personal knowledge).

Judge Mann's conclusion was also based on the Supreme Court's indication in Wal-Mart, 654 U.S. at 354, that the evidentiary standards for admissibility of expert testimony established in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), applies at the class certification stage. There is no logical reason to apply only some of the Rules of Evidence to class certification motions. They should either apply in full, or not at all. I therefore agree with Judge Mann's conclusion that the evidence proffered in support of a motion for class certification must be admissible.[3] The clear implication from the quoted dicta is that the proof that Rule 23's requirements are satisfied must come in the form of competent, admissible evidence.

Once the hearsay is set aside in the supporting affidavits, plaintiffs are only left with themselves. There are five individuals, each of whom are named in this lawsuit, who have come

---

[3] It is worth noting that the Harte court explicitly disagreed with Lujan. But it did so after distinguishing Lujan on its facts: "Lujan is readily distinguishable, as it involved a motion to certify an FLSA class after the class was conditionally certified and class discovery had ended." Harte, 2018 WL 1830811, at *17. The procedural posture in this case is more akin to Lujan than Harte, which makes Harte less persuasive and Lujan more persuasive. Although plaintiffs did not conduct class discovery here, that was their choice to file a motion for class certification before seeking relevant discovery from defendants.

Moreover, the reasoning in Lujan – which is based on the implications underlying persuasive Second Circuit and Supreme Court dicta – is more convincing than the reasoning in Harte – which is premised more on the number of cases that have decided otherwise rather than their rationale for doing so.

forward and attested to facts that suggest they were treated in violation of the NYLL. That does not say anything about what the other 345 employees experienced when they were employed at Everyday Beauty.[4]

Even assuming, however, that these hearsay statements could be considered in support of plaintiffs' motion for class certification, plaintiffs would still fail to show commonality and typicality. Once the allegations in the affidavits are de-duplicated for any mention of the same individuals and are narrowed to those allegations which are remotely grounded in the affiants' actual experiences, plaintiffs have identified a total of 23 employees, including themselves, who were allegedly subjected to unlawful practices under the NYLL. Otherwise, plaintiffs simply conclude that "everyone knows" that all employees in each Everyday Beauty store are paid the same, because it was common knowledge that "that is defendants' policy";[5] or that "everyone who worked at my store" was treated the same because I saw certain identified employees' pay stubs, so it must also be true that other stores followed suit.[6]

Moreover, the allegations about other employees' experiences hardly mention the substance of the operative NYLL claims. The only specific information that plaintiffs include is the employees' varying rates of pay. Presumably, by claiming that all employees were paid the same as the affiants, plaintiffs mean to indicate that other employees – both identified and

---

[4] Plaintiffs have also submitted their own pay stubs. Those, of course, only support their own claims and not the claims of putative class members for the same reasons.

[5] Plaintiffs' attorney submitted a declaration attaching a two-page rulebook that says "Regarding pay, new employee will be paid at $70/day during the training period in cash. After training period, she/he will be paid at $90/day in check and will be issued W2 form." Even assuming I were to accept the attorney's argument that this supports the allegations that every employee was paid the same, that is not borne out in the record, and further, defendants submitted a non-lawyer affidavit stating that those rules were never implemented in defendants' stores. Thus, the record only supports a conclusion that plaintiffs' allegations of a uniform policy are conjecture.

[6] Plaintiffs' conclusion that everyone was treated the same is also belied by the facts included in the affidavits, which suggest that even across the specifically identified employees, they were paid different amounts ranging within a $2 per hour difference and they had different job titles and managers.

unidentified – also were not paid overtime. But plaintiffs only arrive there by conclusory statements. They do not back up their conclusions with real facts, not to mention any facts about all of defendant's stores (or even a majority of them). The same is true for plaintiffs' allegations about other employees' receipt or lack of receipt of any regular wage notices or hiring notices.

Plaintiffs cannot certify a class on mere speculation. There is simply no evidence in the record that plaintiffs' allegations are common or typical of all (or any) other Everyday Beauty employees. Neither five nor 23 employees' experiences, standing alone, serves as the basis for certifying a class. See Gen. Tel. Co. of Sw., 457 U.S. at 157-58.

Accordingly, plaintiffs' [123] motion for class certification is DENIED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       July 11, 2019